## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.

DANTRELL JOHNSON (2); GREGORY
HAMILTON (3); KEON PRUITT (4); TYREESE
GILES (6); JOSIAH TAYLOR (7); JARRETT
ROBINSON (9); TREVAUN ROBINSON (10);
CORTEZ BLAKEMORE (14); WILLIAM
BANKS (19); WILLIAM JOHNSON (21);
EARNEST BOYD (23); AND JA'DARIUS
WRIGHT (38),

        Defendants.

Case. No. 23-cr-160 (NEB/JFD)

**ORDER**

---

    This matter is before the Court on the nondispositive motions filed by Defendants
Dantrell Johnson, Gregory Hamilton, Keon Pruitt, Tyreese Giles, Josiah Taylor, Jarrett
Robinson, Trevaun Robinson, Cortez Blakemore, William Banks, William Johnson,
Earnest Boyd, and Ja'darius Wright. The Court held hearings on the motions on June 24,
25, and 26, 2024. Defendants filed their post-hearing briefs on August 1, 2024, and the
United States filed its post-hearing brief on August 22, 2024, at which time the Court took
under advisement the 45 nondispositive motions of the 12 defendants who participated in
the first round of motions hearings in this case.

I.      **Motions to Sever (Dkt. Nos. 553, 579, 955, 956, 963, 1031, 1038, 1039, 1051, 1068, 1077, 1095)**

Defendants have filed multiple motions to sever, on various grounds. (*See* Dkt. Nos. 553, 579, 955, 956, 963, 1031, 1038, 1039, 1051, 1068, 1077, 1095.) As the Court has stated several times, severance is not yet ripe for decision, and the issue will be held in abeyance until after a final decision on the parties' pretrial motions. (*E.g.*, Third Amended Pretrial Scheduling and Litigation Management Order at 6, Dkt. No. 666.) Accordingly, the motions to sever remain under advisement.

II.     **Motions for the Disclosure of Exculpatory Information (Dkt. Nos. 961, 967, 975, 1044, 1046, 1053, 1067, 1075, 1076, 1090)**

Defendants move for the disclosure of information pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). (Dkt. Nos. 961, 967, 975, 1044, 1046, 1053, 1067, 1075, 1076, 1090.) The Court has already ordered the United States to disclose all exculpatory evidence—that is, evidence that favors a defendant or casts doubt on the United States' case, as required by *Brady* and its progeny. (Third Amended Pretrial Scheduling and Litigation Management Order at 9.) In addition, *Brady* is a constitutional obligation—the United States must disclose exculpatory information even in the absence of a court order. Given this legal landscape, the Court should be able, with security, to deny *Brady* and *Giglio* motions as moot. While the Court will do so, it will also express caution and concern about what it regards as the unreasonably narrow construction being given by the United States to its obligation to disclose exculpatory information.

2

The United States' obligation to disclose exculpatory information in this case has multiple sources. First, of course, are the Supreme Court cases of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). These decisions and the numerous cases following them establish that the Constitution's due process clauses require the prosecution in a criminal case to disclose to the defense all information in the prosecution's possession that favors the defendant or casts doubt on the case of the United States, and also that the scope of such "exculpatory information" extends to impeachment information as to the prosecution's witnesses.

In this case, the timing of the disclosure of exculpatory information is governed by the Court's Third Amended Pretrial Scheduling and Litigation Management Order. The Court points this out because during the motions hearing, the United States argued that *Brady* is a trial right, and that therefore the disclosure of *Brady* information is timely so long as it is disclosed early enough to allow the defendant to use the information at trial. But this timing rule, derived from caselaw, is not all that governs the timing of disclosure in this case. The Court's Third Amended Pretrial Scheduling and Litigation Management Order requires *Brady/Giglio* information to be conveyed to the defense "as it comes into the possession of the prosecution." (Third Amended Pretrial Scheduling and Litigation Management Order at 10.) The only exception to immediate disclosure of exculpatory information is *Brady/Giglio* information that takes the form of impeachment material  of witnesses who are cooperators; for security reasons, the Court's Order does not require disclosure of that type of *Brady/Giglio* information until one month before trial. (*See id.*)

Finally, there is a lawyer's general duty of candor, as expressed in Minnesota Rules of Professional Conduct 3.3 (Candor to the Tribunal), 3.4 (Fairness to Opposing Party and Counsel), and, for prosecutors, Minnesota Rule of Professional Conduct 3.8.[1]

With these sources of the United States' obligation to disclose exculpatory information in mind, the Court turns to the decision of the prosecution not to disclose an adverse judicial finding concerning the truthfulness of a Minneapolis police officer involved in this case and the decision not to disclose that same officer's departmental discipline record.

On August 2, 2019, Officer Tony Partyka of the Minneapolis Police Department was one of two officers who seized an automobile in which Defendant Gregory Hamilton was a passenger. Post-seizure, Officer Partyka's partner searched Mr. Hamilton's person and found marijuana, ecstasy, and a scale. Officer Partyka's veracity and credibility have been seriously questioned by a state court. (*See* Def. Hamilton's Mot. Prohibit Hearsay Ex. 3, Dkt. No. 1158 (Findings of Fact, Conclusions of Law, and Order, *State v. Moore*, No. 27-CR-20-4146 (Hennepin Cty. Sept. 16, 2020)). The Honorable Paul Scoggin, a state district court judge in Hennepin County, decided a suppression motion in one of Officer Partyka's cases that is not connected to this case. Officer Partyka applied for, and obtained, a search warrant for a home, in part based on a claim that in a trash pull behind the residence

---

[1] While lawyers employed by the U.S. Department of Justice need not be members of the Minnesota bar, lawyers who appear in U.S. District Court for the District of Minnesota are bound by the Minnesota Rules of Professional Conduct. D. Minn. LR 83.6(a). In addition, Justice Department lawyers must be members of the bar of the highest court of some state or territory; all bars have ethical provisions that are at least similar to Minn. R. Prof. Conduct 3.3, 3.4, and 3.8.

he had found discarded plastic zip-lock bags containing a white powdery residue typical of illegal narcotics. Following an evidentiary hearing, Judge Scoggin found there was no residue in the bags. Judge Scoggin found Officer Partyka's false assertion to be "a material misrepresentation and, at a minimum, a reckless disregard for the truth." (*Id.*) Judge Scoggin stated further that he had a "diminished estimation of the affiant's [Officer Partyka's] credibility." (*Id.*) None of this was disclosed by the United States in advance of the hearing before this Court on Mr. Hamilton's motion to suppress the scale, marijuana, and Ecstasy found when he was searched at the time of the August 2 seizure.

The Report and Recommendation being filed contemporaneously with this Order reviews the search and seizure issues presented by the August 2, 2019 seizure of the car, and the Court incorporates that discussion here by reference, but a summary of the points necessary to an understanding of this discussion of disclosure of exculpatory information is that (1) the United States originally tried to justify the seizure of the car by asserting that it was parked in a no-parking zone; and (2) the United States argued that because the alleged no-parking violation was captured on body-worn camera, the *Giglio* information as to Officer Partyka was irrelevant:

> [T]he body-worn camera of this incident . . . *clearly shows a car that is unlawfully parked* and then everything that happened in the stop is verified by the body-worn camera. So suggesting that at some other time at some other place with some other defendant there was a finding is irrelevant to a finding that is captured on body-worn camera that is effectually self-proving of the motion to suppress.

(Mot. Hr'g. Tr. at 98, Dkt. No. 1216) (emphasis added).[2]

The no-parking justification for the seizure did not prove to be correct, because the no-parking zone was one created by a private business on that business's property. While the private business might have engaged in self-help if people parked their cars where the business did not want them (for example, by calling a private towing company), it was not against the *law* to park in this no-parking zone. The limits a private business puts on the public's use of its property are not laws, and so there was no violation of law for the police to enforce. The effort of the United States to justify the seizure on the basis of a parking law violation therefore did not succeed. (*See* R. & R. at 9.)

There was another potential rationalization for the seizure of the car, but it implicated Officer Partyka's veracity. A summary witness, IRS Criminal Investigation Special Agent Matthew Schommer, testified at the suppression hearing that Officer Partyka or his partner had recognized the driver of the car and knew the driver did not have a valid driver's license. If proven—which means, in this context, if the Court believed Officer Partyka—these facts may have justified the seizure, because Officer Partyka would have observed a violation of a different law than the law against parking in a no-parking zone. But the United States did not introduce any evidence allowing the Court to conclude that Officer Partyka recognized the driver *before* the car was seized, and thus the Court is recommending that the suppression motion be granted. (*See id.*) This ground for

---

[2] The motion hearing transcripts are currently filed under seal, but the Court has not included any personal identifiers or other confidential information in this Order.

recommending that the suppression motion be granted does not implicate Officer Partyka's truthfulness one way or another.

At the June 24 motions hearing in this case, IRS Criminal Investigation Special Agent Matthew Schommer testified as to all suppression motions, as a summary witness. Before testifying, Agent Schommer read the Minneapolis police reports and reviewed body camera footage, but did not interview the officers involved and had not been present at the scene of the August 2, 2019 seizure. The position of the United States about its disclosure obligations did not vary—it consistently asserted that it had no disclosure obligation as far as Officer Partyka went, at least at the motions hearing—but its reasons did vary. At various times, the prosecution said that because *Brady* is a trial right, it had no *Brady* obligations, at least as to the motions hearing. The United States also orally argued at the motions hearing that *Brady* was inapplicable because Judge Scoggin's order was public and *Brady* does not extend to public information. (Mot. Hr'g Tr. at 99, Dkt. No. 1216.)

The United States forgets, though, that an Order of this Court, in the issuance of which the United States at a minimum acquiesced, obligates the United States to disclose exculpatory information forthwith. That was not done here.[3] Had there been any evidence

---

[3] In oral argument at the beginning of the June 24, 2024 motions hearing, the prosecution acknowledged that "there might be valid *Giglio* concerns" when an officer is found by a judge to have been untruthful under oath, but then claimed that under the Court's Third Amended Scheduling Order the time to disclose *Giglio* information had not yet arrived. (Mot. Hr'g Tr. at 24, Dkt. No. 1216) ("The Government will make its *Giglio* disclosures at the time that the Court orders. That has not happened yet.").) That statement misunderstands the Court's Order and is incorrect. On December 28, 2023, the Court ruled from the bench that "exculpatory evidence that is not impeachment evidence as to a cooperating witness" was required to be disclosed "upon the prosecution coming into possession of the evidence itself." (*See* Hr'g Mins. at 2, Dec. 28, 2023, Dkt. No. 665.) At

that Officer Partyka claimed to have recognized the driver before the seizure, the inaction of the United States would have deprived the defense of exculpatory information and would have required the Court to make a critical decision without having all the relevant facts.

The Court accepts that the United States believed in good faith that its no-parking rationale for the seizure of this car was correct and that, therefore, Officer Partyka's veracity would not be an issue. But the adversary process sometimes results in legal arguments being found to be incorrect. That is what happened here. The Court is also well aware of the limits the law places on a prosecutor's obligation to disclose exculpatory information—those limits are discussed below, in the section of this Order dedicated to defense motions under *Kyles v. Whitley*, 514 U.S. 419 (1995). But the Court is also of the mind that a criminal motions hearing should be a search for the truth. Information was not provided by the prosecution about the veracity of an officer upon whose truthfulness the outcome of a suppression motion might well have depended. A summary witness was called instead of Officer Partyka, and the justifications were offered that *Brady* is a trial right, that *Brady* does not extend to public information, and that the Third Amended

---

the December 28, 2023 hearing, the United States argued that cooperator impeachment material should be turned over closer to trial than one month, but otherwise acquiesced in this ruling. (Mot. Hr'g Tr. at 13–14, Dkt. No. 917.) In its Third Amended Pretrial Scheduling and Litigation Management Order, the Court affirmed in writing its oral order of December 28. Impeachment material, unless it is impeachment material as to a cooperating witness, is therefore due for disclosure "upon the prosecution coming into possession of the evidence itself." Under the plain language of the Third Amended Scheduling Order, the impeachment material as to Officer Partyka should have been disclosed.

Scheduling Order did not require disclosure, at least not yet. The Court expects more thorough disclosures in the future.

For now, the Court will order the United States to undertake a review of the personnel file of Officer Partyka. The United States shall also review citizen complaints concerning Officer Partyka. Any exculpatory information found in those reviews shall be disclosed to the defense forthwith. Should further motions be necessitated by the results of these reviews, they should be filed and served promptly by defense counsel.

**III.  Other Motions for Discovery and Disclosure (Dkt. Nos. 961, 967, 975, 1021, 1034, 1035, 1049, 1063, 1074, 1075, 1091, 1092, 1097)**

**A.  Presentence Reports**

Mr. Hamilton, Mr. T. Robinson, and Mr. Boyd seek disclosure of testifying witnesses' presentence reports ("PSRs"). The United States did not respond to this request in its responsive briefing. Where a criminal defendant seeks "access to a coconspirator's PSR, the government has recognized the possibility that the PSR contains *Brady/Giglio* information and requested *in camera* review, and the district court fails to carry out such review, the district court abuses its discretion." *United States v. Garcia*, 562 F.3d 947, 953 (8th Cir. 2009). In this case, because the United States did not respond to the defendants' request, it therefore cannot be said to have taken cognizance of the "possibility that the PSR seeks *Brady/Giglio* information." Nor did the United States seek *in camera* review. Within 30 days, the United States will advise the Court whether it recognizes the possibility that the PSRs contain *Brady/Giglio* information.

### B.      Rule 16(a)

Several Defendants have moved to discover information pursuant to Federal Rule of Criminal Procedure 16. The Court has already ordered the United States to make all disclosures required by Rule 16(a). (Third Amended Pretrial Scheduling and Litigation Management Order at 9.) In addition, no court order is needed to obligate the United States to comply with its Rule 16 obligations. Motions for Rule 16 discovery are accordingly denied as moot.

### C.      Informants

Mr. Wright, Mr. Blakemore, and Mr. Banks have moved for an order compelling the United States to disclose the identity of informants. The government has a limited privilege to withhold the identity of its confidential informants. *McCray v. Illinois*, 386 U.S. 300, 311 (1967). The defendant bears the burden of demonstrating the need for disclosure. *United States v. Harrington*, 951 F.2d 876, 877 (8th Cir. 1991). "[I]n order to override the government's privilege of nondisclosure, defendants must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.* Put differently, "[t]here must be some showing that the disclosure is vital to a fair trial." *United States v. Curtis*, 965 F.2d 610, 614 (8th Cir. 1992). When deciding whether the confidential informant's identity must be disclosed, courts must balance the defendant's needs against the public's strong interest in preserving the confidences of individuals who report crimes. *Roviaro v. United States*, 353 U.S. 53, 59–62 (1956). Courts consider factors such as the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors. *Carpenter v. Lock*, 257 F.3d 775,

779 (8th Cir. 2001) (citing *Roviaro*, 353 U.S. at 60–61); *see also United States v. Lapsley*, 263 F.3d 839, 841 (8th Cir. 2001) ("Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."). "Where the witness is an active participant or witness to the offense charged, disclosure will almost always be material to the accused's defense." *Devose v. Norris*, 53 F.3d 201, 206 (8th Cir. 1995); *accord United States v. Foster*, 815 F.2d 1200, 1203 (8th Cir. 1987) ("The disclosure of an informant who was an active participant in the crime the accused is charged with is generally required."). By contrast, in cases involving "a 'tipster,' i.e., a person who merely conveys information but does not witness or participate in the offense," disclosure is not vital to a fair trial and so is usually not required. *United States v. Bourbon*, 819 F.2d 856, 860 (8th Cir. 1987).

The Court denies the motions for disclosure of the identity of informants. Mr. Wright, Mr. Blakemore, and Mr. Banks have not provided a basis to conclude that the disclosure of any particular informant's identity would be material to their defense. The motions merely assert that informants were used in the investigation of this case and ask for the disclosure of "any and all" informants used in the investigation or intended as trial witnesses.

Mr. Blakemore offers a little more specificity, but not much. According to Mr. Blakemore, an individual implicated him as "in with the Highs," and Mr. Blakemore wants to know the identity of that person. (Def. Blakemore's Post-Hr'g Mem. at 4, Dkt. No.

11

1249.) But Mr. Blakemore has not explained how this individual's identity is *material* to the determination of his case or *vital* to a fair trial.

### D.    Co-Conspirator Statements

Mr. Banks moves for an order requiring the United States to disclose statements or confessions of co-conspirators that it intends to use at trial. To the extent such statements contain *Giglio* material, the timing of the disclosure of those statements is governed by the Court's Third Amended Pretrial Scheduling Order, and the motions are denied. If the statements or confessions are sought under Rule 16, they are likewise denied. "Rule 16 of the Federal Rules of Criminal Procedure does not authorize the discovery or inspection of statements made by government witnesses." *United States v. Collins*, 652 F.2d 735, 738 (8th Cir. 1981); *see United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992).

Mr. Hamilton and Mr. J. Robinson seek a pretrial ruling on the admissibility of co-conspirator statements. Since these motions raise trial matters, they should be reserved for the district judge to resolve.

### E.    Photobooks

Mr. Boyd and Mr. Banks seek production or inspection of photobooks that were shown to individuals who identified them. The United States has produced Mr. Boyd's individual photographs from the photobook to him and has agreed to disclose Mr. Banks' individual photograph to him. (Gov't Pre-Hr'g Resp. at 57 n.8, Dkt. No. 1136.) The United States contends that the photobooks are attorney work-product and protected from disclosure. (*See* Gov't Post-Hr'g Resp. at 8, Dkt. No. 1340.) The United States also represents that it will not offer the photobooks into evidence in its case-in-chief and denies

12

that the photobooks are material to the defense or the reliability of the identification procedures. (*Id.* at 8–9.)

As the United States correctly points out, none of the provisions of Fed. R. Crim. P. 16(a) require disclosure of the photobooks. The Court therefore next considers whether disclosure of the photobooks is required by due process.

Another court in this District has held that the use of photobooks like the ones here is an "identification procedure." *United States v. Omar*, No. 09-CR-242 (MJD/FLN) 2012 WL 4048886, at *1 (D. Minn. Sept. 13, 2012) ("When a photograph is shown to an individual during an interview, and the individual recognizes and discusses the person in the photograph, an identification is made"). The use of photobooks generally, and the specific question of whether photobooks must be disclosed, is therefore governed by the due process analysis used to analyze questions about the admissibility of identification procedures. *See id.*

Only reliable identifications are admissible. *Manson v. Brathwaite*, 432 U.S. 98, 106, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony . . . ."). Due process concerns arise only when law enforcement jeopardizes reliability by using an identification process that is both suggestive and unnecessary. *Perry v. New Hampshire*, 565 U.S. 228, 238–39 (2012).

The Eighth Circuit has held that the use of the photobook procedure employed in this case is not impermissibly suggestive.

> [T]he initial pre-trial identifications of Omar occurred during interviews in which Hassan, Isse, and Ahmed were shown a series of photographs by FBI agents. These photographs were shown to them one at a time. After each

photograph was displayed, the agent asked the witness an open-ended question about whether the witness knew the person in the picture. The agents followed this same procedure when Omar's photograph was shown during the initial interviews. This identification procedure did not imply that Omar was the person in the picture. Nor did it impermissibly suggest that Omar had engaged in wrongdoing. Omar's picture was simply one in a series of photographs about which the witnesses were asked a non-suggestive question. Such an identification procedure is not impermissibly suggestive.

*United States v. Omar*, 786 F.3d 1104, 1108–09 (8th Cir. 2015). There is no material difference between the procedure used in this case and the procedure upheld by the Eighth Circuit in *Omar*. In both cases, a law enforcement officer showed a series of photographs to a witness and the witness was asked, by an open-ended question, whether they knew the person. If they did not, the law enforcement officer moved to the next photograph. If they did, the law enforcement officer asked follow-up questions.

Of note to the question whether photobooks need to be disclosed to the defense, the Eighth Circuit's holding in *Omar* that proper use of photobooks is not unduly suggestive in no way turned on whether the photographs in the photobook were of similar-appearing people. Agent Schommer testified that the photographs in the photobook were all 8½ x 11 headshots. No more similarity is needed, because the photobook is not only an identification procedure, it is also an investigation procedure. Photographs were put into the photobook because they were photographs of people of investigative interest, not because they were photographs of people who looked like other people in the photobook, which would be the selection criterion used if the photobook were analogous to a photographic lineup. Thus, it is unlikely that the photographs in the photobook, other than those of Mr. Banks or Mr. Boyd, looked like Mr. Banks or Mr. Boyd. Under the Eighth

14

Circuit's *Omar* decision, that lack of similarity is not relevant, and because lack of similarity is not relevant, the photobooks need not be produced.

Because disclosure of the photobooks is not required by Rule 16, because the use of the photobooks in the way they were used in this case has been held by the Eighth Circuit not to be impermissibly suggestive, and because the similarity of the individual photographs themselves is not relevant to the question of impermissible suggestibility, the motion for production of the photobooks is denied.

## IV.    Motion for a Bill of Particulars (Dkt. No. 1033)

Mr. Wright has filed a motion for a bill of particulars (Dkt. No. 1033), which the United States opposes. The Court denies the motion because the Second Superseding Indictment adequately informs Mr. Wright of the charges against him and a motion for a bill of particulars cannot be used to demand a "detailed disclosure of the evidence" the United States "will present at trial." *See United States v. Lundstrom*, 880 F.3d 423, 439 (8th Cir. 2018). In addition, the United States has provided voluminous discovery, which is sufficient to enable Mr. Wright "to understand the nature of the charges against him, prepare a defense, and avoid any surprise." *See id.* at 440.

## V.    Motions to "Adopt" or "Join" Other Defendants' Motions (Dkt. Nos. 1053, 1054, 1065, 1093, 1173)

Mr. J. Robinson, Mr. Blakemore, Mr. Giles, and Mr. Banks ask to "adopt" or "join" motions filed by their co-defendants. The Court will grant the motions insofar as they seek to adopt motions for discovery or to dismiss the indictment on grounds that are universally

applicable to all defendants. Otherwise, the Court denies the motions as overly broad and nonspecific.

**VI.    Mr. D. Johnson's Motion for a Ruling on the Government's *Kyles* Obligation (Dkt. No. 1049)[4] and the United States' Motions to Quash Subpoena (Dkt. Nos. 1151[5] and 1196)**

Citing *Kyles v. Whitley*, 514 U.S. 419 (1995), Mr. D. Johnson seeks to compel the United States to obtain and disclose favorable evidence in the possession of the Hennepin County Sheriff, the Minneapolis Police Department, the Minneapolis City Council, U.S. Attorney Andrew M. Luger, and all "local partners" in the United States' press releases and public statements about this case. (Dkt. No. 1049.) Mr. D. Johnson argues that the "U.S. Attorney took a basket of state convictions, noticed that they could group them together in a racially monolithic prosecution, and prosecute the same crimes for greater sentences. There is simply no question that Hennepin County law enforcement and the Hennepin County Attorney's office are within the scope of *Kyles*." (Def. D. Johnson's *Kyles* Mot. at 2, Dkt. No. 1049.) Mr. D. Johnson also issued a subpoena to U.S. Attorney Andrew M. Luger to testify at the pretrial motions hearing and to produce documents concerning his personal knowledge of an investigation by the Department of Justice and U.S. Attorney's Office about racial bias and unlawful discrimination by the City of Minneapolis and the Minneapolis Police Department. In particular, Mr. D. Johnson seeks

---

[4] To the extent other Defendants' motions seek information pursuant to *Kyles v. Whitley*, 514 U.S. 419 (1995), the Court's discussion in this section also applies to them.

[5] The United States filed the motion to quash at Dkt. No. 1151 *ex parte*. An identical motion was filed without any confidentiality restrictions at Dkt. No. 1196. The Court has therefore instructed the Clerk's Office to remove the *ex parte* designation for Dkt. No. 1151.

information obtained by Mr. Luger as a result of his participation as a lawyer representing the city during an investigation of the MPD when he was in private practice. Mr. D. Johnson states that the information is exculpatory, mitigating, or impeaching, and thus should be produced pursuant to *Kyles*.

The United States responds that *Kyles* does not impose an affirmative obligation on the prosecution to search for material in the control of another government agency unless the agency was so closely aligned with the prosecution that it could be considered part of the prosecution team. The United States also moves to quash the subpoena served on Mr. Luger.

The Court begins with the subpoena. Federal Rule of Criminal Procedure 17(c)(1) provides that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates." A Rule 17 subpoena is "not intended to provide a means of discovery for criminal cases," and its chief purpose is "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials." *United States v. Nixon*, 418 U.S. 683, 698–99 (1974) On motion, a court may quash a subpoena "if compliance would be unreasonable or oppressive." Fed. R. Civ. P. 17(c)(2). The Supreme Court has interpreted that phrase to mean that the party seeking production must show:

> (1) that the documents are evidentiary[] and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699–700.

Mr. D. Johnson has not met this standard. He specifically denies wanting the testimony and documents for the purpose of supporting a claim of selective prosecution (even though he has filed a motion to dismiss the indictment on selective-prosecution grounds). Rather, he says he wants the material because it will be exculpatory or mitigating. He does not explain how this is so. He has not described the potential testimony he hopes to elicit from Mr. Luger or explained *in what way* the documents or testimony would be exculpatory or mitigating. Nor has Mr. D. Johnson described the documents he hopes to receive and in fact, the Court cannot tell from Mr. D. Johnson's motion papers that he even knows whether documents responsive to the subpoena exist. Mr. D. Johnson essentially admits as much in his final filing on the issue, when he describes the "sole fact issue" as "*whether* Mr. Luger has personal knowledge of facts, documents, or statements within these files that support the conclusion that the MPD is racially biased against Black and Brown individuals. Mr. Johnson filed a notice of intent to call Mr. Luger to give testimony about this motion." (Def. Johnson's Resp. at 2, Dkt. No. 1214) (emphasis added).

Next, Mr. D. Johnson has not shown that Mr. Luger's testimony would be relevant. Mr. D. Johnson's reasoning is circular, conclusory, and confusing: "The reason that Mr. Luger's knowledge of the facts underlying the MPD bias report, and generated in Mr. Luger's private investigation, is relevant is that Mr. Luger is now the sole prosecuting authority in this matter, and he has personal knowledge." (Def. D. Johnson's Resp. to Gov't's Mot. Quash at 13, Dkt. No. 1210.) In other words, Mr. Luger's knowledge is

18

relevant solely because he is the U.S. Attorney and he has personal knowledge. But it is *what* someone knows, not *who* they are, that determines relevance.

Mr. D. Johnson has the report of the DOJ's investigation into the City of Minneapolis and the MPD, as well as the Minnesota Department of Human Rights' findings of April 27, 2022. To the extent this information is exculpatory or mitigating, he has it. Mr. D. Johnson has not articulated what additional, *unique* information Mr. Luger would have in his "personal knowledge," nor has he shown that similar information would not be procurable from other sources. The term "fishing expedition" is over-used, but in the case of this subpoena it fits. The motion to quash the subpoena is granted.[6]

Proceeding to the *Kyles* motion, Mr. D. Johnson "asks the Court to determine that the files overseen by Andrew Luger at Jones Day, relevant to the determination that the Minneapolis police are racially biased against Black and Brown individuals, are within the government's *Kyles* obligation because Mr. Luger has personal knowledge of those files and of the facts within those files, and he is now the chief prosecutor in this matter." (Def. Johnson's Resp. at 1, Dkt. No. 1214.) In response to questions from the Court, the parties have both stated that the law requires the United States Attorney to disclose exculpatory information to the defense, whether that knowledge was gained by the U.S. Attorney's Office through official or unofficial channels. This only makes sense. No good reason is apparent why the fact that a federal prosecutor came into possession of exculpatory

---

[6] The Court need not reach the United States' arguments made under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), or 28 C.F.R. § 16.21.

information concerning a defendant in a criminal case through unofficial channels means that prosecutor is under less of an obligation to come forward with what they know.

The defense focuses on the past work of the present United States Attorney representing the City of Minneapolis when he was in private practice. This is presumably because that representation was in connection with the preparation of the DOJ Report whose conclusions the defense considers exculpatory. But there is no reason to create a special rule for Mr. Luger or the law firm that previously employed him; he, like any other federal prosecutor, in line with the principles in the preceding paragraph, must come forward with exculpatory information if he has exculpatory information. Taken down to its essentials, Mr. D. Johnson's *Kyles* motion is seen to be a request that the Court remind the prosecution of its *Brady* obligations. To the extent that is necessary, consider it done.

It is up to the prosecutor to learn about "favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles*, 514 U.S. at 437; *see United States v. Castellano-Benitez*, 743 F. App'x 715, 717 (8th Cir. 2018) (finding the prosecutor's *Brady* obligation "extends to material evidence which prosecutors are themselves unaware of but which is known to others acting on the government's behalf in the case"). Otherwise, "[i]t is well settled that there is no affirmative duty upon the government to take action to discover information which it does not possess.'" *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991) (cleaned up). Nor must the government disclose evidence that "is readily accessible to the defendant." *Id.*

The Court is not in a position to know what information is readily accessible to Mr. D. Johnson or other defendants or the extent to which other entities or individuals may

have acted on the government's behalf. That is the prosecutor's pretrial burden. *See Kyles*, 514 U.S. at 437. Mr. D. Johnson's Motion for a Ruling on the Government's *Kyles* Obligation is denied.

### VII.   Mr. Hamilton's Motion to Exclude Hearsay Testimony at Suppression Hearing (Dkt. No. 1139)

Mr. Hamilton asks the Court not to consider hearsay testimony offered at the motions hearing with respect to the out-of-court statements and observations, provided for the truth of the matter asserted, of Officers Partyka and Knuth with respect to the stop, seizure, search, and arrest of Mr. Hamilton on August 2, 2019. (Dkt. No. 1139.) For the reasons set forth above in Part II.A, and because it is well established that "[c]ourts may consider hearsay evidence at suppression hearings," *United States v. Rowe*, 878 F.3d 623, 626 (8th Cir. 2017), the motion is denied.

### VIII.   Motions to Strike Surplusage (Dkt. Nos. 964, 1024, 1069, 1096)

Several Defendants move to strike surplusage from the Second Superseding Indictment. Mr. T. Robinson moves to strike the following:

- The defendants who will not be tried with him and their alleged overt acts;

- The descriptions of alleged murders, robberies, carjackings, and robberies allegedly committed by defendants other than Mr. Robinson for the benefit of the alleged enterprise; and

- The alleged alias "Tricky Tre."

(Def. T. Robinson's Mot. Strike at 1–2, Dkt. No. 964.) Mr. Boyd moves to strike:

- His alleged alias, "Shaky Shawn";

21

- The term "associate" as it relates to Mr. Boyd; and

- The alleged overt acts of Mr. Boyd' co-defendants, such as murders, attempted murders, assaults, and other violent conduct.

(Def. Boyd's Mot. Strike at 1–2, Dkt. No. 1024.) Mr. Hamilton moves to strike:

- His alleged alias, "Lil Lord";

- Alleged overt acts that occurred after August 24, 2021, when Mr. Hamilton entered the custody of the State of Minnesota, and alleged overt acts that occurred "years before Mr. Hamilton first set foot in the State of Minnesota"; and

- The alleged overt acts of other individuals.

(Def. Hamilton's Mot. Strike at 1–2, Dkt. No. 1069.) Mr. Banks asks to strike:

- His alleged aliases, "Bear" and "Big Will";

- Alleged overt acts that occurred after May 2, 2023, when Banks entered the custody of the State of Minnesota, and alleged overt acts that occurred "years before Mr. Hamilton first set foot in the State of Minnesota"; and

- The alleged overt acts of other individuals.

(Def. Banks' Mot. Strike at 1–2, Dkt. No. 1096.)

The Court may strike surplusage from an indictment upon a defendant's motion. Fed. R. Crim. P. 7(d). Whether to strike surplusage "is a matter within the district court's discretion." *United States v. Figueroa*, 900 F.2d 1211, 1218 (8th Cir. 1990). Such a motion "should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." *Dranow v.*

*United States*, 307 F.2d 545, 558 (8th Cir. 1962).

Defendants argue that their alleged aliases are prejudicial and irrelevant. The United States responds that it intends to prove at trial the moving Defendants' nicknames because those nicknames are relevant to their identification and their association with the alleged Highs enterprise. According to the United States, the evidence will show that Highs gang members used aliases and that within the gang the moving Defendants were known primarily, if not exclusively, by their nicknames. "[I]nformation the Government intends to prove at trial 'cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).'" *United States v. Guevara*, No. 21-CR-241 (ECT/DTS), 2024 WL 2862131, at *3 (D. Minn. June 6, 2024) (citing *United States v. Kueng*, No. 21-cr-108 (PAM/TNL), 2021 WL 5564558, at *2 (D. Minn. Nov. 29, 2021); *United States v. Rehak*, No. 08-cr-0072 (PJS/SRN), 2008 WL 2828886, at *8 (D. Minn. July 21, 2008)). "In some cases, the use of a defendant's *irrelevant* nickname to suggest his bad character or unsavory proclivities may be prejudicial," but where the nickname is relevant or part of the United States' evidence, it is not. *United States v. Delpit*, 94 F.3d 1134, 1146 (8th Cir. 1996).

The United States has represented that it intends to prove at trial the moving Defendants' nicknames and has explained how the nicknames are relevant. The Court finds that the aliases are relevant and not prejudicial and thus will not strike the aliases as surplusage.

Defendants next argue that allegations about overt acts involving violent crimes that do not implicate them and about co-defendants who have pleaded guilty or will be tried

separately are prejudicial and irrelevant. The United States responds that it will need to prove the existence of the Highs enterprise and that evidence of the Highs' violent activities (*i.e.*, murder, assault, robberies), together with evidence of firearm and drug trafficking crimes, will establish the existence of a criminal enterprise that engaged in a pattern of racketeering activity. The United States intends to prove that the purposes of the Highs enterprise include engaging in violent acts to attack and retaliate against rival gangs, enriching members and associates with proceeds from illegal firearms and narcotics trafficking, and engaging in violent acts to protect the enterprise's territory, power, and property.

The Court accepts that the United States intends to present evidence of alleged violent acts, together with evidence of alleged firearms and drug trafficking crimes, at the same trial, to prove the existence of a criminal enterprise as defined by the RICO statute and the purposes of that alleged enterprise. Therefore, the Court will not strike as surplusage alleged overt acts involving violent crimes or other defendants. With particular respect to Mr. Boyd, who is not charged in Count One, he is alleged to have committed overt acts in relation to the Highs enterprise charged in Count One. Mr. Boyd is also charged in Counts Four and Five with crimes that relate to the alleged goals of the enterprise. Accordingly, the overt acts and crimes committed by other defendants are relevant and necessary to explaining Mr. Boyd's association with the Highs and how his alleged overt acts and other changes related to the enterprise.

Of final note, nothing in the Court's findings or ruling should be read to prevent any defendant from filing a motion in limine addressing how the trial court should present the

information in the indictment to the jury.

Accordingly, **IT IS HEREBY ORDERED** that:

1. William Banks, Earnest Boyd, Tyreese Giles, Gregory Hamilton, Dantrell Johnson, William Johnson, Keon Pruitt, Trevaun Robinson, Josiah Taylor's Motion to Sever (Dkt. No. 553) **REMAINS UNDER ADVISEMENT**.

2. Dantrell Johnson's Motion for Release of *Brady* Materials (Dkt. No. 1046) is **DENIED AS MOOT**.

3. Dantrell Johnson's Motion for Order for the Government's *Kyles* Obligation (Dkt. No. 1049) is **DENIED**.

4. Gregory Hamilton's Motion to Sever from Defendant Dantrell Johnson (Dkt. No. 955) **REMAINS UNDER ADVISEMENT**.

5. Gregory Hamilton's Motion to Sever from Defendant Keon Pruitt (Dkt. No. 956) **REMAINS UNDER ADVISEMENT**.

6. Gregory Hamilton's Motion for Continuance of Pretrial Motion Deadlines and Motion Hearing (Dkt. No. 957) is **DENIED AS MOOT**.

7. Gregory Hamilton's Motion for Discovery Re: Overt Act #27 of August 2, 2019 (Dkt. No. 975) is **DENIED AS MOOT**.

8. Gregory Hamilton's Motion to Strike Surplusage in Indictment (Dkt. No. 1069) is **DENIED**.

9. Gregory Hamilton's Motion to Exclude Co-Conspirator Statements and Motion for Pre-Trial Determination of Admissibility (Dkt. No. 1073) is **RESERVED FOR THE TRIAL COURT**.

10. Gregory Hamilton's Motion for Disclosure of Gang Intelligence and Investigative Data (Dkt. No. 1074) is **DENIED AS MOOT**.

11. Gregory Hamilton's Motion for Release of *Brady* Materials (Dkt. No. 1075) is **DENIED AS MOOT**.

12. Gregory Hamilton's Motion for Disclosure of *Brady/Giglio* Materials for Law Enforcement Witnesses (Dkt. No. 1076) is **DENIED AS MOOT**.

13. Gregory Hamilton's Motion to Exclude Hearsay Testimony at Suppression Hearing (Dkt. No. 1139) is **DENIED**.

14. Keon Pruitt's Motion for Release of *Brady* Materials (Dkt. No. 1044) is **DENIED AS MOOT**.

15. Tyreese Giles' Motion for Leave to Join Co-Defendant Motions (Dkt. No. 1173) is **GRANTED** insofar as he seeks to join motions that are universally applicable to all defendants but otherwise **DENIED**.

16. Josiah Taylor's Motion to Join Motion for Continuance (Dkt. No. 947) is **DENIED AS MOOT**.

17. Josiah Taylor's Motion for Disclosure of *Brady* Materials (Dkt. No. 1067) is **DENIED AS MOOT**.

18. Josiah Taylor's Motion to Sever Count 7 of the Second Superseding Indictment (Dkt. No. 1068) **REMAINS UNDER ADVISEMENT**.

19. Jarrett Robinson's Motion for Severance (Dkt. No. 1051) **REMAINS UNDER ADVISEMENT**.

20. Jarrett Robinson's Motion to Exclude Inculpatory Statements by Non-testifying Co-Defendants (Dkt. No. 1052) is **RESERVED FOR THE TRIAL COURT**.

21. Jarrett Robinson's Motion for Disclosure Notice of Joinder in Co-Defendant Motions for Disclosure of *Brady* Materials (Dkt. No. 1053) is **GRANTED** as to joinder but **DENIED AS MOOT** as to *Brady* materials.

22. Jarrett Robinson's Motion for Discovery Notice of Joinder in Co-Defendants' Motion for Discovery and Inspection (Dkt. No. 1054) is **GRANTED** as to joinder but otherwise **DENIED AS MOOT**.

23. Trevaun Robinson's Motion for Disclosure of *Brady* Materials (Dkt. No. 961) is **DENIED AS MOOT**.

24. Trevaun Robinson's Motion to Sever Defendant (Dkt. No. 963) **REMAINS UNDER ADVISEMENT**.

25. Trevaun Robinson's Motion to Strike Surplusage (Dkt. No. 964) is **DENIED**.

26. Cortez Blakemore's Motion to Adopt Motion to Sever (Dkt. No. 579) **REMAINS UNDER ADVISEMENT**.

27. Cortez Blakemore's Motion for Disclosure of Informants and Make Informants Available for Interview (Dkt. No. 1063) is **DENIED**.

28. Cortez Blakemore's Motion for Leave to Join in Co-Defendants' Motions for Discovery and to Dismiss the Superseding Indictment (Dkt. No. 1065) is **GRANTED** insofar as the motions are universally applicable to all defendants but otherwise **DENIED**.

29. William Banks' Motion for Release of *Brady* Materials (Dkt. No. 1090) is **DENIED AS MOOT**.

30. William Banks' Motion for Disclosure of Sources and Informants (Dkt. No. 1091) is **DENIED**.

31. William Banks' Motion for Disclosure of Photo Identification Information (Dkt. No. 1092) is **DENIED AS MOOT**.

32. William Banks' Motion for Leave to Adopt Motions for Discovery Filed by Co-Defendants (Dkt. No. 1093) is **GRANTED** insofar as the motions are universally applicable to all defendants but otherwise **DENIED**.

33. William Banks' Motion to Sever Defendant (Dkt. No. 1095) **REMAINS UNDER ADVISEMENT**.

34. William Banks' Motion to Strike Surplusage (Dkt. No. 1096) is **DENIED**.

35. William Banks' Motion for Disclosure of Post-Conspiracy Statements of Co-Defendants (Dkt. No. 1097) is **DENIED** to the extent it exceeds *Brady*.

36. William Johnson's Motion to Sever Defendant (Dkt. No. 1077) **REMAINS UNDER ADVISEMENT**.

37. Earnest Boyd's Motion for Disclosure of *Brady* Materials (Dkt. No. 967) is **DENIED AS MOOT**.

38. Earnest Boyd's Motion for Discovery and Inspection (Dkt. No. 1021) is **DENIED AS MOOT**.

39. Earnest Boyd's Motion to Strike Surplusage (Dkt. No. 1024) is **DENIED**.

40. Earnest Boyd's Motion to Sever (Dkt. No. 1038) **REMAINS UNDER ADVISEMENT**.

41. Earnest Boyd's Motion to Sever Count 5 (Dkt. No. 1039) **REMAINS UNDER ADVISEMENT**.

42. Ja'darius Wright's Motion to Sever (Dkt. No. 1031) **REMAINS UNDER ADVISEMENT**.

43. Ja'darius Wright's Motion for Bill of Particulars (Dkt. No. 1033) is **DENIED**.

44. Ja'darius Wright's Motion for Discovery and Inspection (Dkt. No. 1034) is **DENIED AS MOOT**.

45. Ja'darius Wright's Motion for Disclosure of Informants and Make Informants Available for Interview (Dkt. No. 1035) is **DENIED**.

46. The United States' Motions to Quash Subpoena (Dkt. Nos. 1151 and 1196) are **GRANTED**.

47. Gregory Hamilton's Motion for Leave to File Reply (Dkt. No. 1341) is **GRANTED**.

48. The United States shall undertake a review of the personnel file of Officer Partyka and citizen complaints concerning Officer Partyka. Any exculpatory information found in those reviews shall be disclosed to the defense forthwith.

Should further motions be necessitated by the results of these reviews, they should be filed and served promptly by defense counsel.

49. Within 30 days the United States shall advise the Court whether it recognizes that PSRs for testifying defendants contain exculpatory information.

Dated: September 23, 2024

*/s/  John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

28