**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TYREESE GILES, et al.,<br><br>Defendants. | Case No. 23-CR-160 (NEB/JFD)<br><br>ORDER ON MOTIONS FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL |

---

A jury found Defendants Tyreese Giles, Josiah Taylor, Trevaun Robinson, William Banks, and Gregory Brown guilty of various counts related to the Racketeer Influenced and Corrupt Organizations Act ("RICO") prosecution against the Highs street gang. The Third Superseding Indictment charged the five defendants with some combination of the following counts: conspiracy to violate RICO (Count One); conspiracy to distribute controlled substances (Count Three); and possession of a firearm in furtherance of drug trafficking (Counts Six and Seven). (ECF No. 1708.) Giles, Robinson, Banks, and Brown were convicted of Count One; Taylor and Banks were convicted of Count Three; and Taylor was convicted of Count Seven.

Now, Defendants each move for judgment of acquittal (ECF No. 2094) and for a new trial (ECF No. 2095). For the reasons below, Defendants' motions for post-trial relief are DENIED.

## BACKGROUND

For this Order, the Court assumes the reader is familiar with the background facts and details of the Highs gang and their alleged racketeering activity.[1] Giles, Taylor, Robinson, Banks, and Brown were among 19 defendants charged in the ten-count Third Superseding Indictment. (ECF No. 1708.) At trial, the government sought to prove that Defendants (a) conspired to commit racketeering activities in service of the Highs enterprise; (b) conspired to distribute controlled substances; and (c) possessed a firearm in furtherance of drug trafficking.

The Court held a twelve-day trial from May 12 to May 30, 2025. The government called dozens of witnesses, including law enforcement officers, detectives, and cooperating co-defendants. The Court received into evidence text messages, social media posts, surveillance footage, and photographs.

[1] Background information can be found in the Report & Recommendations and consolidated Order on the defendants' pretrial motions. (*See* ECF No. 1616 (January 2 R&R); ECF No. 1612 (December 27 order on non-dispositive motions); ECF No. 1765 (March 3 consolidated order on R&Rs).)

The jury ultimately convicted Defendants on these counts as reflected in the Verdict Forms (ECF No. 2067):

| Defendant | Count One (RICO Conspiracy) | Count Three (Conspiracy to Distribute Controlled Substances) | Counts Six, Seven (Possession of a Firearm in Furtherance of Drug Trafficking) |
|---|---|---|---|
| Tyreese Giles | Guilty | n/a | n/a |
| Josiah Taylor | Not Guilty | Guilty | Guilty (VII) |
| Trevaun Robinson | Guilty | Not Guilty | Not Guilty (VI) |
| William Banks | Guilty | Guilty | n/a |
| Gregory Brown | Guilty | Not Guilty | n/a |

## ANALYSIS

The Court must resolve two motions: (1) Defendants' joint motion for judgment of acquittal and (2) Defendants' joint motion for a new trial alleging that the verdict was a miscarriage of justice.

### I. Motion for Judgment of Acquittal

Under Rule 29(a) of the Federal Rules of Criminal Procedure, "on the defendant's motion [the court] must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." But "a district court has very limited latitude to do so and must not assess witness credibility or weigh evidence." *United States v. Hassan*, 844 F.3d 723, 725 (8th Cir. 2016). The Court "views the entire record in the light most favorable to the government, resolves all evidentiary conflicts accordingly, and accepts all reasonable inferences supporting the jury's verdict." *United States v. Aungie*, 4

F.4th 638, 643 (8th Cir. 2021) (citation omitted). "A verdict will only be overturned if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." *United States v. Weaver*, 554 F.3d 718, 720 (8th Cir. 2009).

Defendants join in a motion for judgment of acquittal, and Taylor submitted a separate memorandum in support. Giles, Robinson, Banks, and Brown were convicted of Count One (RICO Conspiracy). Giles was additionally found guilty of the RICO conspiracy murder charge. Banks and Taylor were convicted of Count Three (Conspiracy to Distribute Controlled Substances). And Taylor was convicted of Count Seven (Possession of a Firearm in Furtherance of Drug Trafficking).

### *A. Evidence Presented at Trial*

At trial, cooperating witnesses explained that the Highs included subsets, often called "cliques," which made up the larger Highs gang. The Highs, sometimes with members of their own clique and sometimes with members of other cliques, sold drugs together, gave drugs to each other for resale, provided firearms to each other, taunted or "trolled" their rival gang the Lows, and shot Lows members. Cooperating witnesses identified all Defendants except Banks as part of the conspiracy. Significant evidence at the trial corroborated this testimony, including law enforcement testimony and records, social media records, and video and photographic evidence. Defendants each quibble with some of this evidence, arguing that it does not support the verdict. But when the Court views the evidence in the light most favorable to the government and resolves all

inferences in favor of the verdict, Defendants' arguments fail.

***Giles.*** Cooperating witness Jovan Knight testified that Giles was a member of the FreeShotz clique within the Highs, which was corroborated by social media posts. Giles' reputation in the Highs was a "shooter." To show that Giles committed first-degree murder as part of the RICO conspiracy, the government presented evidence of the murder of Darien Berry, carried out by Giles.

Viewing the record in the light most favorable to the government, there was sufficient evidence for a reasonable jury to conclude that Giles participated in the RICO conspiracy, including the underlying first-degree murder charge.

***Robinson.*** Knight testified that Robinson was a member of the YNT clique within the Highs, with a reputation for his wealth and shooting "as necessary." Robinson's association with the Highs was corroborated by evidence about his activity at the Winner gas station, involvement in shootings, and social media posts, including an appearance in one of the Highs' rap music videos titled "Not from the Lows."

Viewing the record in the light most favorable to the government, there was sufficient evidence for a reasonable jury to conclude that Robinson participated in the RICO conspiracy.

***Banks.*** Cooperating witnesses testified to observing Banks trafficking fentanyl, marijuana, and other drugs on Broadway, where only Highs members and their associates were permitted to sell drugs. Law enforcement officers testified about the

seizures of fentanyl and marijuana from Banks' vehicles. The government also presented evidence of social media images depicting Banks "throwing up the Y" with other Highs members.

Viewing the record in the light most favorable to the government, there was sufficient evidence for a reasonable jury to conclude that Banks participated in the RICO conspiracy and a conspiracy to distribute controlled substances.

***Brown.*** Knight testified that Brown was one of the more respected members of the Highs. Avante Nix, another cooperating witness, added that Brown is in the clique EMB ("Emerson Murder Boys") within the Highs. Knight and Nix explained that Brown created rap videos (such as one titled "Not from the Lows") that were intended to "troll" and disrespect their rival gang, the Lows. Nix testified at length about his drug trafficking partnership with Brown for the benefit of the Highs.

Viewing the record in the light most favorable to the government, there was sufficient evidence for a reasonable jury to conclude that Brown participated in the RICO conspiracy.

***Taylor.*** Much of the government's evidence against Taylor stems from a traffic stop on June 10, 2022. Lieutenant Adam Lepinski testified about Taylor's simultaneous possession of oxycodone and a firearm in his vehicle after he attempted to flee from police officers. He explained that Taylor was in a white Dodge van with co-defendant Matthew Robinson. As the unmarked police car turned on its lights to initiate the traffic stop, the

white van tried to flee up onto the sidewalk, where it got stuck between a brick building and a light pole. When searching the vehicle, law enforcement officers found a firearm—a 10-millimeter Glock semiautomatic—in the trunk of the car. Lepinski also recovered a bag of blue pills stashed in a hidden cubby in the trunk. Lepinski acknowledged that DNA testing for the firearm was linked to Matthew Robinson, not Taylor; but Taylor's fingerprint was found on the firearm's magazine.

The government also presented evidence that Taylor was arrested at the Minneapolis airport, returning from Las Vegas, with a bottle containing Percocet and Xanax pills. In addition, Nix testified that Taylor sold Percocet at 21st and Washington with another Highs member.

Viewing the record in the light most favorable to the government, there was sufficient evidence for a reasonable jury to conclude that Taylor participated in a conspiracy to distribute controlled substances and possessed a firearm in furtherance of drug trafficking.

### *B. Defendants' Arguments*

#### *1. As to All Defendants*

Defendants advance a winding argument in support of their motion. They argue that the government's theory of RICO culpability—that drug trafficking was the economic engine of the Highs—is untenable because (a) the special verdict forms did not assign any quantities of fentanyl trafficked; and (b) the government did not present "hard

evidence" that any Highs members used proceeds from drug trafficking to purchase guns used to enforce "a pronounced territorial prowess." (ECF No. 2094 at 4.) As a result, they contend, the evidence is not sufficient to support a RICO conspiracy conviction. (*See id.*)

Neither argument carries the day. The first is a straw man and misrepresents the government's theory of RICO culpability. While allegations of fentanyl trafficking featured prominently, the government also presented evidence of the Highs' distribution of other controlled substances like oxycodone, Percocet, and marijuana. Nor was the government required to prove a "pronounced territory" patrolled by the Highs.

Defendants' second argument also misunderstands the government's burden to prove a RICO conspiracy. Defendants appear to challenge the sufficiency of the evidence for the fourth element of RICO conspiracy: that "two or more persons reached an agreement or came to an understanding to conduct or participate in the affairs of the enterprise, directly or indirectly, *through a pattern of racketeering activity*." (ECF No. 2044 at 32 (emphasis added).) So long as the government presented evidence supporting the underlying conspiracy to engage in this racketeering activity (and it did), the government need not prove that the conduct actually occurred. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." (citing *Callanan v. United States*, 364 U.S. 587, 594 (1961)). And in any event, purchase of guns from drug proceeds was not the government's only theory;

the jury also heard testimony and reviewed evidence about other racketeering activity including murder, distribution of controlled substances, and robbery.

Defendants next argue that, absent compelling evidence about Highs drug trafficking, proof of RICO conspiracy rested on flawed testimony from the two cooperating witnesses, Knight and Nix. (ECF No. 2094 at 5–7.) Defendants' critiques of Knight and Nix's testimony goes to weight, not admissibility. But the Court may not "assess the credibility of the witnesses." *United States v. Allery*, 139 F.3d 609, 611 (8th Cir. 1998) (citation modified). Rather, the Court must credit Knight and Nix's testimony in the light most favorable to the government. *United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022). Doing so, the Court concludes that a reasonable jury could have returned guilty verdicts for Defendants based on the evidence presented. And, regardless, Knight and Nix's testimony was corroborated by documentary evidence and testimony of law enforcement officers.

2. *As to Josiah Taylor*

***Count Three.*** Taylor argues that the evidence failed to support a guilty verdict on Count Three because the jury rejected the government's fentanyl theory. (ECF No. 2100 at 3.) Taylor seems to argue that because "[f]entanyl was the only drug for which quantity determinations were listed on the verdict form," it was the only controlled substance that could support a conviction. (*Id.* at 4.) Not so. The Court expressly instructed the jury that "fentanyl, cocaine, MDMA, oxycodone, and marijuana are controlled substances under

federal law." (ECF No. 2044 at 47.) Because the government presented evidence detailing Taylor's possession and distribution of oxycodone and Percocet, a reasonable jury could find Taylor guilty of Count Three.

Taylor also contends that the government failed to present evidence that he joined in any agreement with a co-conspirator to traffic drugs. (ECF No. 2100 at 5.) Taylor acknowledges that the oxycodone recovered during the June 10, 2022 arrest was attributed to him, but he argues that Matthew Robinson was not a co-conspirator to distribute that substance. (ECF No. 2100 at 5.) True, Matthew Robinson was not charged with Count Three in connection with this stop, but this is immaterial—the Third Superseding Indictment explicitly alleges that Taylor conspired with co-defendants and "others known and unknown." (ECF No. 1708 at 39); *see United States v. Wells*, 646 F.3d 1097, 1103 (8th Cir. 2011) (rejecting defendant's argument that "the government actually charged few of his coconspirators"). And Matthew Robinson was not the only potential coconspirator the government identified—it also presented evidence that Taylor trafficked drugs with others. Viewing the record in the light most favorable to the government, a reasonable jury could conclude that Taylor was guilty of Count Three.

***Count Seven.*** Finally, Taylor maintains that there was insufficient evidence tying him to the firearm recovered during the June 10 arrest such that no reasonable jury could convict him of Count Seven. (ECF No. 2100 at 5.) This firearm was a 10-millimeter Glock semiautomatic, which law enforcement found in the white Dodge van that Taylor and

Matthew Robinson used to flee. DNA testing linked Matthew Robinson's fingerprints to the actual firearm and Taylor's fingerprints to its magazine. Importantly, possession of a firearm "may be joint; it need not be exclusive." *United States v. Brown*, 634 F.3d 435, 439 (8th Cir. 2011) (citation omitted). And even though finding Taylor's fingerprints on the firearm itself "might have strengthened the government's case, it is not required to convict." *Id.* (citation modified). Viewing the record in the light most favorable to the government, a reasonable jury could conclude that Taylor was guilty of Count Seven.

## II. Motion for a New Trial

All Defendants move for a new trial on various grounds. Rule 33(a) of the Federal Rules of Criminal Procedure provides that this Court may "vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33 motions are "disfavored" and courts "must exercise Rule 33 authority sparingly and with caution." *United States v. Harriman*, 970 F.3d 1048, 1058 (8th Cir. 2020) (citation modified).

***Motions before and during trial.*** Defendants incorporate by reference the motions made at the conclusion of the government's case. (ECF No. 2095 at 1.) The Court considered and rejected these motions before and during trial. (ECF No. 1583 at 25–30 (selective prosecution); ECF No. 1598 at 16–21 (severance of co-defendants); ECF No. 1973 at 52–55 (evidence of shooting at Merwin's Liquors parking lot).[2]) Nothing about the

---

[2] Because the parties have not ordered a full trial transcript, the Court does not cite it here. The *Batson* challenge Defendants raise was rejected during trial.

evidence at trial has altered the Court's reasoning on those motions.

***Admissibility of Knight's testimony.*** Robinson, Taylor, and Giles argue that the Knight testimony about their reputation as "shooters" within the Highs was inadmissible, creating reversible error. (ECF No. 2095 at 2–4 (citing Fed. R. Evid. 404).) At trial, the Court overruled Defendants' objections to these portions of Knight's testimony. Defendants borrow language from *United States v. Street* to argue that Knight's testimony about their reputations for "institutional criminality" was "inherently and unfairly prejudicial." (ECF No. 2095 at 3–4 (quoting 548 F.3d 618, 632 (8th Cir. 2008).) But *Street* stands for the more nuanced proposition that evidence of gang affiliation and reputation for violence would "deflect the jury's attention" when not related to the immediate charges. 548 F.3d at 632 (quoting *United States v. Roark*, 924 F.2d 1426 (8th Cir. 1991)) (citation modified). Unlike Defendants, Street was not indicted on any gang-related charges, and the evidence presented had "no discernible connection" to the charges he faced. *Id.* at 623, 632.

Here, all Defendants were charged with RICO conspiracy arising from an alleged violent gang rivalry. The government presented Knight's testimony to connect Defendants to the Highs as well as illustrate the violent nature and exchange of hostilities of the gang rivalry between the Highs and the Lows. Because Knight's testimony was relevant to multiple elements of the RICO conspiracy charge, it was admissible.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The motion for judgment of acquittal (ECF No. 2094) is DENIED;

2. The motion for a new trial (ECF No. 2095) is DENIED.

Dated: December 18, 2025

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge